1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

JASON JOHNSON,

                                        Plaintiff,

        vs.

PROFESSIONAL COLLECTION
CONSULTANTS,

                                        Defendant.

CASE NO. 09cv1596-WQH-BLM

**ORDER**

HAYES, Judge:

        The matter before the Court is the Motion by Defendant Professional Collection Consultants for Summary Judgment Against Plaintiff Jason Johnson ("Motion for Summary Judgment").  (Doc. # 12).

## I.        Background

        On July 22, 2009, Plaintiff initiated this action by filing a Complaint in this Court. (Doc. # 1).

### A.        Allegations of the Complaint

        Between September 2008 and April 2009, Defendant attempted "to unlawfully and abusively collect a debt allegedly owed by Plaintiff, and this conduct caused Plaintiff damages."  (Doc. # 1 ¶ 3).  "Sometime before August 1, 2008, Plaintiff checked his credit report and noticed for the first time that [an] alleged debt had been reported on his credit report. ...  This alleged debt does not belong to Plaintiff."  (Doc. # 1 ¶¶ 24-25).  "[B]efore August 1, 2008, the alleged debt was assigned, placed or otherwise transferred, to Defendant

for collection." (Doc. # 1 ¶ 23). "Plaintiff disputed the debt ... and requested Defendant to verify the alleged debt." (Doc. # 1 ¶ 28). On September 9, 2008, September 19, 2008, and April 1, 2009, "without verifying the debt, Defendant sent a letter attempting to collect the alleged debt." (Doc. # 1 ¶ 31; *see also* Doc. # 1 ¶¶ 37, 42).

The Complaint contains two counts: (1) violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*., and (2) violations of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, *et seq*. Specifically, the Complaint alleges that Defendant violated 15 U.S.C. § 1692g and Cal. Civ. Code § 1788.17 because "Defendant failed within five days after its initial communication with Plaintiff, to provide written notification containing" the language required by 15 U.S.C. § 1692g(a)(3)-(5). (Doc. # 1 ¶ 32). The Complaint alleges that the September 9, 2008, September 19, 2008, and April 1, 2009 collection letters, sent "prior to verifying the veracity of the alleged debt," each violated 15 U.S.C. § 1692g(b) and Cal. Civ. Code § 1788.17. (Doc. # 1 ¶¶ 33, 38, 43). The Complaint alleges that, "[t]hrough this conduct, Defendant used a false, deceptive, or misleading representation or means in connection with the collection of a debt," in violation of 15 U.S.C. § 1692e and Cal. Civ. Code § 1788.17; and "[t]hrough this conduct, Defendant used an unfair or unconscionable means to collect or attempt to collect any debt," in violation of 15 U.S.C. § 1692f and Cal. Civ. Code § 1788.17. (Doc. # 1 ¶¶ 34-35, 39-40, 44-45).

The Complaint seeks actual damages, statutory damages and attorney's fees.

**B.    Motion for Summary Judgment**

**1.    Defendant's Evidence**

On March 5, 2010, Defendant filed the Motion for Summary Judgment. (Doc. # 12). Defendant submitted a declaration from Todd Shields, Defendant's Vice-President and General Manager. (Doc. # 12-2). Shields stated:

> On April 26, 2006, the Plaintiff's account was assigned to Defendant. On May 1, 2006, [Defendant's computerized collection tracking and filing software] generated a notice order for a standardized collection letter constituting a 15 U.S.C. [§] 1692g validation notice regarding Plaintiff's delinquent account with Cingular Wireless. In accordance with its standard practice, Defendant mailed the May 1, 2006 letter to the address for Plaintiff that was provided to Defendant by the original Creditor, Cingular Wireless, which was 4574½ Park Blvd., San Diego, California 92116. This is also the address to which Cingular Wireless

mailed the statements on the account as evidenced by Exhibit 11 hereto. ... The [May 1, 2006] letter referenced the debt owed to Cingular Wireless, the principal amount of the debt ($1,315.58), the accrued interest ($233.46), and included the Defendant[']s standard validation of Debt Notice as required by the Federal Fair Debt Collection Practices Act. The Plaintiff did not respond to this letter, and this letter was not returned to Defendant by the Postal Service.

(Shields Decl. ¶ 7, Doc. # 12-2). Attached to the Declaration are four account statements from Cingular Wireless addressed to Plaintiff at 4574½ Park Blvd., San Diego, California 92116, dated from March 2004 through July 2004. (Shields Decl., Ex. 11, Doc. # 12-2). Shields stated:

On June 1, 2006 [Defendant] generated a second standardized letter, which was also mailed to 4574½ Park Blvd., San Diego, California 92116. ... Plaintiff did not respond to this letter, and this letter was not returned to Defendant by the Postal Service. ...

On June 30, 2006 [Defendant] generated a third standardized letter, which was also mailed to 4574½ Park Blvd., San Diego, California 92116. ... Plaintiff did not respond to this letter, but ... [o]n July 25, 2006, the June 30, 2006 notice was returned by the United States Postal Service as undeliverable with no forwarding address available. However, the notices sent on May 1, 2006 and on June 1, 2006 were never returned by the United States Postal Service. ...

(Shields Decl. ¶¶ 8-9, Doc. # 12-2). Shields stated that "[o]n January 23, 2008, a new address was located for Plaintiff," and, on January 24, 2008, May 14, 2008, June 16, 2008, and July 17, 2008, Defendant sent letters to Plaintiff at the new address, "offer[ing] to settle the balance [of the amount allegedly owed] for 50% of the balance." (Shields Decl. ¶¶ 10-13, Doc. # 12-2). According to Shields, Plaintiff did not respond to these letters, and the May 14, 2008, June 16, 2008, and July 17, 2008, letters were returned by the United States Postal Service as undeliverable with no forwarding address. (Shields Decl. ¶¶ 10-13, Doc. # 12-2).

Shields stated:

On September 15, 2008, Plaintiff notified Defendant that the account was disputed and requested validation under 15 U.S.C. [§] 1692g. ... Defendant ... took steps to validate the account.... Defendant ... suspended all collection activity and sought verification of the account from its assignor. Only two communications were issued to Plaintiff after receipt of his request for validation of the account and dispute. The first communication, issued on September 18, 2008, did not seek to collect the debt but merely notified Plaintiff that a dispute was received and invited Plaintiff to call and discuss the account and provide additional information. The second communication, issued on April 1, 2009, merely notified Plaintiff that Defendant was providing the information he had requested on September 15, 2008. ... On October 21, 2008, [Plaintiff] sent another communication requesting an investigation under the Federal Fair Credit Reporting Act. ... Since the communication from Plaintiff ... did not

1    disclose the factual basis of any dispute, [Defendant] did not respond to it since
2    it had already requested verification of Plaintiff's account in response to his
     communication dated September 15, [2008]....

3    (Shields Decl. ¶¶ 15-18, Doc. # 12-2).  According to Shields:

4        After this litigation was filed, Defendant began an investigation to determine the
         current address of Plaintiff.  Defendant determined that the original address used
5        when Plaintiff opened the account was 6323 Connie Drive, San Diego,
         California, but that the address provided at the time of assignment and on the bill
6        copies (and the address to which the three notices were mailed by Defendant)
         was was 4574½ Park Blvd., San Diego, California 92116.
7
8    (Shields Decl. ¶ 14, Doc. # 12-2).  Attached to the Shields Declaration is "a copy of the signed
9    agreement between Cingular Wireless and Plaintiff that was signed on March 10, 2004," and
10   lists an address of 6323 Connie Drive, San Diego, California 92115.  (Shields Decl. ¶ 7, Ex.
11   2, Doc. # 12-2).

12              **2.     Plaintiff's Evidence**

13       On March 25, 2010, Plaintiff filed his opposition to the Motion for Summary Judgment.
14   (Doc. # 13).  Plaintiff submitted his "residential history," indicating that Plaintiff resided at
15   6323 Connie Drive, San Diego, California 92115 from February 2003-March 2004 and
16   December 2004-April 2005; from January 2006-June 2006, Plaintiff resided outside California;
17   and at no time did Plaintiff reside at 4574½ Park Blvd., San Diego, California 92116.  (Doc.
18   # 13-1).  Plaintiff submitted a copy of military orders dated May 30, 2006, indicating that from
19   April 12, 2006 through May 31, 2006, Plaintiff was stationed in Oceana, Virginia.  (Doc. # 13-
20   2).  The military orders indicate that the address for Plaintiff's father is 6323 Connie Drive,
21   San Diego, California 92115.  (Doc. # 13-2).

22       Plaintiff submitted a declaration, wherein he stated that he has "never resided at 4574½
23   Park Blvd., San Diego, California 92116"; he has "never received any mail addressed to or
24   delivered to" that address; he has "never asked, told, or authorized, anyone to send mail to"
25   that address; he has never had mail delivered to that address "forwarded to [him] in any
26   manner"; and he has "never known ... anyone who lived at" that address.  (Johnson Decl. ¶¶
27   9-15, Doc. # 13-3).  Plaintiff stated that he did not have an account with Cingular Wireless on
28   March 17, 2004, and he "never incurred the debt in question in this case."  (Johnson Decl. ¶¶
     20-21, Doc. # 13-3).  Plaintiff stated:

1    I have been a victim of identity theft for some time, including when the
     underlying debt that is the subject of this lawsuit was incurred. ...  I am in the
2    process of attempting to undo the damage done by some person or persons who
     appear to have used my identity while I was a member of the armed services. ...
3    A number of debts that were opened in my name and have subsequently been
     reversed, and this particular situation is only one of a number of situations where
4    I have had to take action to enforce my rights.

5    (Johnson Decl. ¶¶ 4-6, Doc. # 13-3).

6                          **3.      Contentions of the Parties**

7    Defendant contends:

8         The opinion issued in the case of *Mahon vs. Credit Bureau of Placer
          County Incorporated*, 171 F. 3d 1197 (9 Cir., 1999) established precedent in this
9    circuit that a debt collector satisfies the statutory obligation imposed by 15
     United States Code 1692g by sending the notice, and it does not matter whether
10   or not the consumer actually receives the notice. *Mahon* further established the
     precedent that a consumer is **presumed** to have received a notice that has been
11   sent and not returned to the collection agency.

12        The undisputed facts in this case establish that there is no triable issue of
     fact that a 15 United States Code 1692g and California Civil Code Section
13   1812.700(b) notice was sent by Defendant to Plaintiff on May 1, 2006 and that
     it was not returned by the United States Postal Service as undeliverable.
14   Therefore, the undisputed facts in this case establish that Plaintiff is presumed
     to have received the validation notice sent by Defendant on May 1, 2006.
15   Therefore, there is no triable issue of fact that any of the communications sent
     by Defendant to Plaintiff on September 9, 2008; September 19, 2008; or April
16   1, 2009 constitute a violation of either 15 United States Code 1692g or
     California Civil Code Section 1812.700(b) as an initial communication with
17   Plaintiff without a validation notice.

18   (Doc. # 12-1 at 1-2 (citation omitted)).  Defendant contends that application of the "common

19   law mailbox rule" establishes that:

20        [T]he only obligation imposed upon a debt collector by 15 U.S.C. 1692g is to
          send a 1692g validation notice. ...  [T]he failure of the consumer to actually
21   receive the 1692g notice does not create a violation of 1692g because 1692g
     does not impose any obligation whatsoever on the debt collector to ascertain the
22   notice is sent to the current, correct address of the debtor.  The debt collector
     complies with 1692g by sending the notice to the last known address of the
23   debtor, which is exactly what Defendant in this case did.

24   (Doc. # 15 at 5-6).  Defendant contends that, in the alternative, if Defendant did violate 15

25   U.S.C. § 1692g, Defendant is protected as a matter of law by the "bona fide error defense" in

26   15 U.S.C. § 1692k(c).  (Doc. # 15 at 8-9; Doc. # 25 at 3-6).  Finally, Defendant contends that

27   it is entitled to its attorney fees under 15 U.S.C. § 1692k(a)(3) "because the lack of a triable

28   issue of fact and the clarity of the law on these issues establish that this action was brought by

Plaintiff in bad faith and for purposes of harassment."  (Doc. # 12-1 at 3).

Plaintiff contends:

> As the defendant points out, 'It is undisputed that [any communications other than the May 1, 2006] did not contain language to comply with the 15 United States Code 1692g validation notice requirements.' *Defendant's Motion, pg 2, lns 18-20.*  Consequently, if it is determined that the defendant did not initially communicate with the plaintiff in connection with the collection of this alleged debt on May 1, 2006, any subsequent communication by the defendant to the plaintiff establishes the defendant violated the FDCPA because, by the defendant's own admission, no notice was ever sent to the plaintiff after that.

> For the purposes of this brief only, the plaintiff assumes, without conceding, that on May 1, 2006 the defendant mailed a letter to 4574½ Park Blvd., San Diego, California 92116 and this letter contained the proper notices under 15 U.S.C. § 1692g.  Consequently, the dispositive issue here is, 'Was the letter that the defendant claims to have mailed out on May 1, 2006 the initial communication with the plaintiff in connection with the collection of a debt?' The plaintiff asserts the answer is 'No,' because the plaintiff did not ever live at that address. ...

> [I]t is very clear that the plaintiff was serving his country in Virginia at the time the notices were purportedly sent to the San Diego address.  This is an address where the plaintiff never resided, never received mail, *and never even heard of*[].  The defendant is arguing that it has no liability as long as it sends a letter *somewhere; anywhere*.  It can be any address, anywhere in the country, or the world for that matter, without regard to whether it is received.  The plaintiff does not deny that the defendant has no duty to ensure the notice is received, but when there is a genuine dispute of the fact as to whether the plaintiff lived at the address at which the letter was sent, when there is no possibility whatsoever that the plaintiff could have received the notice, there is a genuine issue of material fact that must be resolved as to whether the notice was sent 'to the consumer.'  To hold otherwise is to hold that 15 U.S.C. § 1692g means nothing.  A debt collector can send a letter anywhere it likes, and that is good enough.  Mailing a letter to an address where the consumer does not reside, or even get his mail, is not 'send[ing] the consumer a written notice'; it is thumbing one's nose at the law.

(Doc. # 13 at 4, 5-6).  Plaintiff also contends that Defendant has not met its burden of showing that the bona fide error defense applies.  (Doc. # 24 at 3-8).

## II.     Discussion

### A.     Standard of Review

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party.  *See Anderson v. Liberty*

1  *Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  A fact is "material" if it may affect the outcome of

2  the case.  *See id.* at 248.

3       The party moving for summary judgment bears the initial burden of identifying those

4  portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine

5  issue of material fact.  *See Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  Once the

6  moving party meets its initial burden, the non-moving party must go beyond the pleadings and,

7  by its own evidence, "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P.

8  56(e).  In order to make this showing, the non-moving party must "identify with reasonable

9  particularity the evidence that precludes summary judgment."  *Keenan v. Allan*, 91 F.3d 1275,

10  1279 (9th Cir. 1996).

11       "In ruling on a motion for summary judgment, the nonmoving party's evidence is to be

12  believed, and all justifiable inferences are to be drawn in that party's favor."  *Hunt v.*

13  *Cromartie*, 526 U.S. 541, 552 (1999) (quotation omitted).  At the summary judgment stage,

14  "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate

15  inferences from the facts are jury functions, not those of a judge."  *Anderson*, 477 U.S. at 255;

16  *see also Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1035-36 (9th Cir. 2005).

17  **B.**    **Evidentiary Objections**

18       Plaintiff objects to statements in the Shields Declaration which recite representations

19  purportedly made by Cingular Wireless to Defendant.  Plaintiff contends:

20      [A]s an evidentiary issue, if the defendant hopes to rely on some supposed
    representation by Cingular Wireless, the defendant has the burden of

21      demonstrating that such a representation actually took place.  That has not
    happened here.  The plaintiff objects to, and requests the Court strike, any

22      attempt by the defendant to cite or admit hearsay evidence that lacks foundation
    and is predicated on the statement of the defendant without any personal

23      knowledge.

24  (Doc. # 13 at 8).

25       Defendant contends:

26      The testimony regarding the statements to Cingular Wireless and the documents
    provided to Defendant by Cingular Wireless are not offered for the truth of the

27      matter asserted, i.e. to prove that Plaintiff actually received mail at 4574½ Park
    Blvd., San Diego, California 92116.  They are only offered to show that

28      Defendant received this information from Cingular Wireless and that it used this
    information to determine that Plaintiff actually received mail at 4574½ Park

1   Blvd., San Diego, California 92116.  Therefore, these documents are not offered
2   for the truth of the matter asserted, i.e. that Plaintiff actually received mail at
    4574½ Park Blvd., San Diego, California 92116, but rather to prove that
3   Defendant considered the information provided by Cingular Wireless in
    determining where it sent the 15 U.S.C. 1692g validation notice and that it was
4   reasonable in determining that Plaintiff actually received mail at 4574½ Park
    Blvd., San Diego, California 92116.

5   (Doc. # 25 at 8).

6       The Court concludes that the portion of the Shields Declaration which explains that

7   Cingular Wireless provided Defendant with the 4574½ Park Blvd. address (Shields Decl. ¶ 7,

8   Doc. # 12-2), is admissible to show the effect of those statements on Defendant.  *See L.A. News*

9   *Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 936 (9th Cir. 2002) ("Out-of-court declarations

10  introduced to show the effect on the listener are not hearsay.").  However, the portion of the

11  Shields Declaration which recite representations purportedly made by Cingular Wireless

12  "[a]fter this litigation was filed" (Shields Decl. ¶ 14, Doc. # 12-2), is inadmissible hearsay

13  because any post-Complaint representations could only be relevant for the truth of the matter

14  asserted, rather than for any effect upon Defendant.  These post-Complaint representations will

15  not be considered when ruling upon the pending Motion for Summary Judgment.

16      **C.    Fair Debt Collection Practices Act**

17      The Fair Debt Collection Practices Act ("Act") "is designed to protect consumers who

18  have been victimized by unscrupulous debt collectors, regardless of whether a valid debt

19  actually exists." *Baker v. G.C. Serv. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982).  The Act's

20  purpose is to "eliminate the recurring problem of debt collectors dunning the wrong person or

21  attempting to collect debts which the consumer has already paid." *Swanson v. S. Oregon*

22  *Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988) (quotation omitted).  The Act is "a strict

23  liability statute," which "should be construed liberally in favor of the consumer." *Clark v.*

24  *Capital Credit & Collection Serv., Inc.*, 460 F.3d 1162, 1175-76 (9th Cir. 2006) (quotation

25  omitted).

26      The Act requires all debt collectors to provide debtors with a written "Validation of

27  Debt Notice" ("Notice") within five days after the initial communication with a consumer

28  which must contain:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). Under the Act, "a debt collector must provide verification of the debt to the debtor, upon written request made by the debtor within 30 days after receipt of the initial Notice. If no written demand is made, the collector may assume the debt to be valid." *Mahon v. Credit Bureau of Placer County Inc.*, 171 F.3d 1197, 1202 (9th Cir. 1999) (citing, inter alia, 15 U.S.C. § 1692g(b)).

In *Mahon*, the Ninth Circuit Court of Appeals stated that "[t]he plain language of section 1692g(a) does not require that a Validation of Debt Notice must be received by a debtor. Instead, the plain language states that such a Notice need only be sent to a debtor." *Id*. at 1201. The Court of Appeals held that there was no genuine issue of fact that the debt collector defendant sent the required Validation of Debt Notice to the plaintiffs as required by 15 U.S.C. § 1692g(a), because the "[t]he [defendant]'s standard business practice established that the September 21, 1995 Notice was sent to the [plaintiffs]' home via first class mail." *Id*. The Court of Appeals stated:

> Having already determined that the Notice required by the [Act] was sent to the [plaintiffs] by the [defendant], we presume that it was received shortly thereafter. Under the common law Mailbox Rule, proper and timely mailing of a document raises a rebuttable presumption that it is received by the addressee.

> The [plaintiffs] argue that their receipt of the September 21, 1995 Notice cannot be presumed because, they contend, a genuine issue of fact exists as to whether subsequent letters sent to them by the [defendant] were returned as undeliverable. We reject this argument because it is contrary to the evidence and fails in any event to rebut the presumption of receipt of the September 21, 1995 Notice. ... [E]ven if letters subsequent to the September 21, 1995 Notice had been returned, without any evidence that the September 21, 1995 Notice was

returned, the inference would be that it was not returned.  This would tend to establish its receipt by the [plaintiffs], apart from the common law Mailbox Rule presumption; and, in any event, that presumption is not rebutted by the absence of proof that the September 21, 1995 Notice was returned to the [defendant].

*Id*. at 1202 (citations omitted).

In this case, the undisputed evidence shows that, on May 1, 2006, Defendant mailed a letter containing the proper notices required by § 1692g(a) to Plaintiff at 4574½ Park Blvd., San Diego, California 92116.  The undisputed evidence also shows that the subsequent letters sent by Defendant to Plaintiff did not contain the notices required by § 1692g(a).  The issue is whether Defendant's mailing of the May 1, 2006 letter satisfied its obligation under the Act to send a Validation of Debt Notice.

Defendant contends that "the common law mailbox rule cases ... establish that the only obligation imposed upon a debt collector by 15 U.S.C. § 1692g is to **send** a 1692g validation notice. ..."  (Doc. # 15 at 5-6).  However, as stated in *Mahon*, the mailbox rule cases require that the letter be *properly* mailed.  *See Mahon*, 171 F.3d at 1202 ("Under the common law Mailbox Rule, '*proper* and timely mailing of a document raises a rebuttable presumption that it is received by the addressee.'") (emphasis added) (quoting *Anderson v. U.S.*, 966 F.2d 487, 491 (9th Cir. 1992)); *Nunley v. City of Los Angeles*, 52 F.3d 792, 796 (9th Cir. 1995) (same) (citing *Rosenthal v. Walker*, 111 U.S. 185, 193 (1884) ("The rule is well settled that if a letter *properly directed* is proved to have been either put into the post-office or delivered to the postman, it is presumed, from the known course of business in the post-office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed.") (emphasis added)).  Plaintiff's evidence that he has never resided at, received mail at, or otherwise had any affiliation with, the address listed on the envelope creates an issue of fact as to whether the May 1, 2006 letter was *properly* sent to Plaintiff.  *Cf. Mahon*, 171 F.3d at 1199 ("In accordance with its standard business practice, the [defendant] mailed the letter to the [plaintiffs]' home address.  The [plaintiffs] had lived at that address for 45 years.").  In light of Plaintiff's evidence, there is an issue of fact as to whether the May 1, 2006 letter was properly mailed to Plaintiff.

Even if Defendant had demonstrated as a matter of law that the May 1, 2006 letter was

properly mailed, there would be an issue of fact as to whether Plaintiff has rebutted the mailbox rule presumption. In *Mahon*, the Ninth Circuit stated that the mailbox rule "presumption is not rebutted by the absence of proof that the ... Notice was returned to the [defendant]." *Id*. at 1202. In *Mahon*, it was undisputed that the creditor mailed the notice to an address where the debtor had lived for 45 years. In this case, by contrast, there is evidence that Defendant mailed the Notice to an address where Plaintiff has never resided or received mail. *See Clark v. Robert W. Baird Co., Inc.*, 152 F. Supp. 2d 1040, 1044 (N.D. Ill. 2001) (mailbox rule "presumption may be rebutted by ... evidence that the letter bore an incorrect address"); *Bunner v. Imperial Ins. Co.*, 181 Cal. App. 3d 14, 23 (1986) (presumption rebutted by "the [sender]'s failure to ascertain [the intended recipient]'s current address"). Defendant submits evidence that it acquired the 4574½ Park Blvd. address from Cingular Wireless, but there is no evidence of how Cingular Wireless acquired the address, or whether any bill sent by Cingular Wireless to Plaintiff at the 4574½ Park Blvd. address was returned as undeliverable.

Defendant's counsel asserts in the briefing that "Defendant offered testimony it was provided with copies of the monthly statements sent by Cingular Wireless to Plaintiff that were addressed to 4574½ Park Blvd., San Diego, California 92116 in March, April, May, and June of 2004 and not returned by the U.S.P.S. as undeliverable." (Doc. # 25 at 7; *see also* Doc. # 15 at 7-8 (same)). However, viewing all inferences in Plaintiff's favor, no evidence submitted by Defendant establishes whether any statement mailed by Cingular Wireless was not returned as undeliverable. *Cf*. Shields Decl. ¶ 7, Doc. # 12-2 ("In accordance with its standard practice, Defendant mailed the May 1, 2006 letter to the address for Plaintiff that was provided to Defendant by the original Creditor, Cingular Wireless, which was 4574½ Park Blvd., San Diego, California 92116. This is also the address to which Cingular Wireless mailed the statements on the account as evidenced by Exhibit 11 hereto."); *id*., Ex. 11 (consisting of photocopies of four Cingular Wireless account statements, with no indication of whether they were mailed or whether they were returned as undeliverable or when they were provided to Defendant).

The Court concludes that there is a genuine issue of fact as to whether Defendant violated § 1692g.

### D. Bona Fide Error Defense

"The [Act] makes debt collectors liable for violations that are not knowing or intentional. It provides a narrow exception to strict liability, however, for bona fide errors." *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008) (quotation omitted). The statutory bona fide error defense provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). "The bona fide error defense is an affirmative defense, for which the debt collector has the burden of proof. The defense does not protect a debt collector whose reliance on a creditor's representation is unreasonable. The defense requires the defendant to show that it maintains procedures to avoid errors." *Reichert*, 531 F.3d at 1006 (citations omitted). "A debt collector is not entitled under the [Act] to sit back and wait until a creditor makes a mistake and then institute procedures to prevent a recurrence. To qualify for the bona fide error defense under the [Act], the debt collector has an affirmative obligation to maintain procedures designed to avoid discoverable errors. ... The procedures themselves must be explained, along with the manner in which they were adapted to avoid the error." *Id*. at 1007.

Defendant contends that "Defendant did 'maintain procedures reasonably adapted to avoid any such error.' The evidence establishes that Defendant monitors returned mail to determine whether or not a notice, including a validation notice, is returned." (Doc. # 25 at 5). This evidence is insufficient to satisfy Defendant's burden to show the absence of a genuine issue of material fact as to the bona fide error defense. In many cases, a single letter sent to an incorrect address will not be returned as undeliverable. *Cf. Nunley*, 52 F.3d at 796 ("All that a party seeking to demonstrate non-receipt can normally do is to submit affidavits.... A returned envelope or other indication of failed delivery is of course helpful, although undoubtedly not available in many cases."). Defendant has submitted no evidence of procedures designed to verify the accuracy of an address received from a creditor prior to

mailing letters to the debtor.  For example, there is no evidence that Defendant asked Cingular Wireless how it obtained the purported address for Plaintiff and/or whether any correspondence sent to that address by Cingular Wireless had been returned as undeliverable. *Cf. Reichert*, 531 F.3d at 1006 (describing the "elaborate procedures" which satisfied the debt collector's burden in another case, "includ[ing] a requirement that the creditor verify under oath that each charge was accurate, as well as 'the publication of an in-house fair debt compliance manual, updated regularly and supplied to each firm employee; training seminars for firm employees collecting consumer debts; and an eight-step, highly detailed pre-litigation review process to ensure accuracy and to review the work of firm employees to avoid violating the Act'") (quoting *Jenkins v. Heintz*, 124 F.3d 824, 834-35 (7th Cir. 1997)).

The Court concludes that Defendant has failed to demonstrate as a matter of law that the bona fide error defense prevents the imposition of liability under the Act.

### E.    Defendant's Request for Attorney's Fees

Because Defendant has not produced evidence that Plaintiff instituted this action "in bad faith and for the purpose of harassment," Defendant's request for attorney's fees is denied. 15 U.S.C. § 1692k(a)(3) ("On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.").

### III.   Conclusion

IT IS HEREBY ORDERED that the Motion for Summary Judgment is **DENIED**. (Doc. # 12).

DATED:  May 28, 2010

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge